### CUSTOM BUILT HOMES OF MAINE, Plaintiff,

v.

### HAMPTON MANAGEMENT CORPORATION, et al., Defendants.

**Civ. No. 87–0280–P.**

United States District Court,
D. Maine.

July 29, 1988.

---

James B. Haines, Jr., Black, Lambert, Hopkinson & Coffin, Portland, Me., for plaintiff.

Stuart Holber, Phillips, Gerstein, Holber, LaFlamme, Migliori & Barron, Haverhill, Mass., for Boston Five Cent Sav. Bank, et al.

James F. Cloutier, Cloutier, Barrett, Cloutier & Conley, Portland, Me., for Hampton.

Bruce F. Sleeper, Jensen, Baird, Gardner & Henry, Portland, Me., for ComFed Sav.

Durward W. Parkinson, Bernstein, Shur, Sawyer & Nelson, Kennebunk, Me., for David Kaplan.

James B. Barnes, Drummond & Drummond, Portland, Me., for Stuart Holber.

Anthony A. Armstrong, Portland, Me., for First Portland Mortg.

Roderick H. Potter, Potter & Jamieson, Saco, Me., for Consolidated Excavators.

Andrew A. Cadot, Perkins, Thompson, Hinckley & Keddy, Portland, Me., for Peoples Heritage Bank.

Richard A. Hull, Biddeford, Me., for Melodye K. Deberadinis.

Harvey J. Putterbaugh, Portland, Me., for Hampton Management.

MEMORANDUM DECISION AND ORDER GRANTING THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS INDIVIDUAL UNIT OWNERS AND DEFENDANTS MORTGAGEES AND DENYING THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

GENE CARTER, District Judge.

The issue before the court is whether the failure to properly incorporate a condominium association prior to the first transfer of an individual unit nullifies the creation of the condominium itself under the Maine Condominium Act. In Count I of the underlying action,[1] the plaintiff, a building contractor, seeks to perfect a workmen's lien filed against a condominium project known as Beaver Creek Townhouse Condominium in Old Orchard Beach, Maine. On the basis of its theory that the condominium was never properly formed, the plaintiff has named as defendants, in addition to the condominium developer, two other groups comprised of numerous individual unit owners and their mortgagees. Before the Court now are the motions for summary judgment of these latter two groups of defendants and the plaintiff's motion for partial summary judgment.[2]

Pursuant to this Court's February 10, 1988 Order, and the Bankruptcy Court's February 25, 1988 Order lifting the automatic stay,[3] all parties submitted a stipulated Statement of Facts and an agreed-upon Statement of Issue. The facts relevant to these motions are as follows. In accordance with a construction contract with the defendant developer, the plaintiff performed certain services and furnished certain materials for the Beaver Creek

1. The plaintiff seeks $170,027.38, based on services and materials allegedly furnished to the developer prior to January 15, 1985. The Complaint also includes a count for breach of contract and a count based on *quantum meruit,* but these are not relevant to the motions now before the Court.

2. The record also contains the defendant unit owners' motion to strike the plaintiff's memorandum in support of its motion for partial summary judgment. Since the Court granted the plaintiff's motion for extension of time to file the memorandum on May 23, 1988, the motion is moot.

3. The claim was originally filed in state court but removed to this Court on the basis of the defendant developer's voluntary petition in bankruptcy.

Townhouse Condominium project from April 22, 1985 to January 15, 1987; the project is the same property described in a September 23, 1985 Declaration of Condominium and a July 17, 1986 Amended Declaration of Condominium, both recorded in the York County Registry of Deeds; the plaintiff filed its Notice of Lien Claim for $170,027.38 on February 9, 1987 at the York County Registry of Deeds; the Beaver Creek Townhouse Condominium Owners' Association was not legally incorporated under the Maine Condominium Act until July 20, 1987; and all transfers of ownership rights from the developer to the defendants here identified as unit owners and mortgagees were effective prior to July 20, 1987. *See* Stipulation of Facts.

The agreed-upon Statement of Issue is: Whether the mechanic's lien filed by Custom Built Homes of Maine, Inc., constitutes a lien against individual condominium units purchased from the developer/defendant and/or subsequent sales thereof due to the sale of said units by the developer/defendant prior to the creation of a Unit Owners' Association pursuant to the Maine Condominium Act, or whether the owners and mortgagees of said units should be dismissed as party defendants.[4]

*See* Exhibit B to Stipulation of Facts. Resolution of the issue thus requires analysis of the Maine Condominium Act, 33 M.R.S.A. § 1601–101 *et seq*,[5] to determine whether a failure to incorporate a unit owners' association affects the validity of the creation of the condominium or the transfer and marketability of title to an individual unit. In a Fed.R.Civ.P. 56 motion for summary judgment, the movant must show the absence of any genuine issue of material fact.

The Maine Condominium Act, enacted in 1981 and based on the Uniform Condominium Act, is organized into four sections:

General Provisions (Article 1); Creation, Alteration and Termination of Condominiums (Article 2); Management of the Condominium (Article 3); and Protection of Condominium Purchasers (Article 4). Under § 1602–101(a) and (a) of Article 2:

> A condominium may be created pursuant to this Act only by recording a declaration executed in the same manner as a deed, by all persons whose interests in the real estate will be conveyed to unit owners and by ever lessor of a lease the expiration or termination of which will terminate the condominium or reduce its size, ... [although] [n]o interest in any unit may be conveyed to a purchaser until the unit is substantially completed as evidenced by a certificate or statement of substantial completion executed by an engineer or architect, or until a certificate of occupancy is issued by the municipal inspector of buildings....

Section 1602–103(d) (Construction and Validity of Declaration and Bylaws) provides, in relevant part, that "[t]itle to a unit and common elements is not rendered unmarketable. or otherwise affected by reason of an insubstantial failure of the declaration to comply with this Act. Whether a substantial failure impairs marketability is not affected by this Act." The statute does not require a declaration to contain information or proof of the valid incorporation of a unit owners' association, *see* § 1602–105.

In Article 3 (Management of the Condominium), § 1603–101, the Act provides that a "unit owners' association shall be organized prior to any conveyance, except a conveyance as security for an obligation, of a unit by the declarant"; once formed the association is empowered among other abilities to adopt and amend bylaws, to make contracts and incur liabilities, to regulate the use, maintenance and repair of common areas, to acquire or convey property inter-

---

**4.** The Court's February 10, 1988 Order requested that the parties address "the legal issue of whether the alleged failure of Hampton Management to properly incorporate the condominium association prior to the first closing nullifies the creation of the condominium under the Maine Condominium Act."

**5.** All statutory references are to Title 33 of the Maine Revised Statutes unless otherwise indicated.

ests and in general to exercise any powers necessary for the goverance of the association, § 1603–102. In the event of a lien "attributable to work performed or materials supplied before creation of the condominium," "whether perfected before or after the creation of the condominium," each unit owner pays and is released on a *pro rata* basis, § 1603–117. Lastly, § 1601–110 of Article 1 (General Provisions) provides that "[t]his Act shall be applied and construed so as to effectuate its general purpose to make uniform the law with respect to the subject of this Act among states enacting it."

In support of their motion for summary judgment, the unit owners and their mortgagees argue that under § 1602–101(a) the only statutory condition precedent to the valid creation of a condominium is the recording of a declaration; that the mandatory language regarding organization of a unit owners' association is intended merely to protect the unit owners' role in the management of the condominiums; and that because the lien was not recorded prior to the conveyance of units to the individual owners, these owners were *bona fide* purchasers. The plaintiff argues that a plain reading of § 1603–101 requires the conclusion that any conveyance of an individual unit prior to the organization of a unit owners' association is invalid; that failure to form an association invalidates the creation of the condominium; that § 1603–101's mandatory language emphasizes the legislative intent to protect the unit owners' management role; and that because the lien was recorded prior to the valid formation of the owners' association, the lien operates against the individual owners as against tenants-in-common.

In the absence of other guidance on this issue,[6] and in accordance with the Maine

Condominium Act's directive that the Act "shall be applied and construed so as to effectuate its general purpose to make uniform the law with respect to the subject of this Act among states enacting it," the Court looks to the Uniform Condominium Act on which the Maine Act is based. As to the statutory provisions relevant to the issue now before the Court, the Acts are essentially similar, and thus the comments to the Uniform Act establish persuasive guidelines in reading the Maine Act. *Omaha Pollution Control Corp. v. Carver Greenfield Corp.*, 413 F.Supp. 1069 (D.Neb.1976); *In re Taylor*, 45 B.R. 643 (D.Pa.1985).

Comments 2 and 4 to § 2–103 of the Uniform Act, which the Maine Act adopted *verbatim*, address the precise issue whether the failure to incorporate a condominium association affects the transfer and marketability of title. Section 2–103(d) (and § 1602–103(d)) establish that title is not affected by any insubstantial failure of the declaration to comply with the Act. Comment 2 emphasizes that "the declaration is the instrument which creates and defines the units and common elements. No reference is made to other instruments, such as bylaws, because these instruments have no impact on title, whether or not recorded." Comment 4 sets forth specific examples of defects *in the declaration* which are regarded as "insubstantial" under § 2–103(d), and states explicitly that "[f]ailure to organize the unit owners' association at the time specified in Section 3–101 [§ 103–101 of the Maine Act] would not be a defect in the declaration at all, and would not affect the validity or marketability of titles in the condominium."

The Court concludes, therefore, that notwithstanding the fact that the Beaver

---

**6.** The Court notes that there is no Maine law or legislative history on this issue, and that the parties have stipulated to all facts material to its resolution; the issue is thus appropriate for certification to the Maine Law Court under Me. R.Civ.P. 76B(a)(C). *See also In re Richards*, 253 F.Supp. 913 (D.Me.1966); *Gagne v. Carl Bauer Schrauben Fabrich, GmbH*, 595 F.Supp. 1081 (D.Me.1984). A Law Court decision would clearly dispose of the determinative issue of the

defendants' motion for summary judgment. *See Hiram Ricker & Sons v. Student Int'l Mediation Society*, 342 A.2d 262 (Me.1975), appeal dismissed 423 U.S. 1042, 96 S.Ct. 764, 46 L.Ed. 2d 631.

The Court finds, however, that the issue is not complex and capable of resolution based on a straightforward reading of the statute; in the absence of any request from the parties, the Court proceeds to its analysis.

Creek Condominium Owners' Association was not legally incorporated as of the time the first conveyance of individual units of the Beaver Creek Townhouse Condominium, that failure did not affect the prior valid creation of the condominium itself. Since the individual unit owners took title as *bona fide* purchasers before notice of the plaintiff's workmen's lien was filed, the plaintiff cannot proceed against them or their mortgagees.

Accordingly, the Court GRANTS the defendant unit owners' and the defendant mortgagees motion for summary judgment, and DENIES the plaintiff's motion for partial summary judgment.